IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID GEE,
      Plaintiff,

v.

MARY SABOL, et al.,
      Defendants.

3:14-cv-1184

(Judge Mariani)

## MEMORANDUM

Plaintiff David Gee, an inmate formerly confined at the York County Prison, in York, Pennsylvania, commenced this action on June 19, 2014 pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Warden Mary Sabol, Deputy Warden Doll, Officer Trostle, Supervisor Abenshon, Chaplin Bupp, the York County Prison Religious Committee, et al., Solicitor Michael W. Flannelly, Assistant Solicitor Donald L. Reihart, Commissioner Christopher B. Reilly, County Commissioner President Steve Chronister, and the York County Commissioner's Office, (collectively, the "York County Defendants"), and Nurse Patricia Bennett. (Doc. 1). Before the court are three motions (Docs. 18, 20, 35) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) field by Defendant Bennett and the York County Defendants. For the reasons set forth below, Defendant Bennett's motion will be granted. (Doc. 18). Additionally, the York County Defendants' first motion will be granted, whereas their second motion will be denied. (Docs. 20, 35).

I.    **Procedural Background**

On September 26, 2014, Defendant Bennett filed a motion (Doc. 18) to dismiss and

supporting brief (Doc. 19). Despite requesting an extension of time to file a brief in opposition to Defendant Bennett's motion, Plaintiff failed to oppose the motion. (Docs. 33, 34). Consequently, Defendant Bennett's motion is deemed unopposed. *See* L.R. 7.6 ("Any party opposing any motion ... shall file a brief in opposition . . . [or] shall be deemed not to oppose such motion").

On September 29, 2014, the York County Defendants filed their first motion (Doc. 20) to dismiss and supporting brief (Doc. 21). Plaintiff failed to file a brief in opposition to the motion. On November 3, 2014, Plaintiff was notified that, although he failed to timely file an opposition brief, he would be afforded until December 3, 2014, to oppose the motion. (Doc. 24). On December 5, 2014, Plaintiff filed a "motion and answer to object to the Defendants['] motion." (Doc. 25). The Court accepts Plaintiff's filing as his opposition to the York County Defendants' motion to dismiss.

On March 4, 2015, the York County Defendants filed their second motion (Doc. 35) to dismiss and supporting brief (Doc. 36), arguing that Plaintiff's complaint should be dismissed for failure to comply with the Court's Order of November 3, 2014, and failure to file a brief in opposition in their first motion to dismiss. Because the Court accepts Plaintiff's "motion and answer to object to the Defendants['] motion" (Doc. 25), and deems it an opposition brief, the York County Defendants' second motion to dismiss based on Plaintiff's failure to comply with a Court Order will be denied.

2

## II. Standard of Review

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the

3

elements a plaintiff must plead to state a claim. Second, the court should
identify allegations that, because they are no more than conclusions, are not
entitled to the assumption of truth. Finally, where there are well-pleaded
factual allegations, a court should assume their veracity and then determine
whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

### III. **Allegations of the Complaint**

Plaintiff alleges that when he entered the York County Prison, he identified himself as a member of the Jewish faith. (Doc. 1, ¶¶ 13, 14). He alleges that despite identifying himself as a member of the Jewish faith, he did not receive Kosher meals. (*Id.* at ¶ 16).

4

Therefore, on January 20, 2014, Plaintiff alleges that he filed a grievance regarding the alleged denial of Kosher meals. (*Id.* at ¶ 17).

On January 23, 2014, Plaintiff allegedly wrote to the Chaplain's office inquiring as to why he was not receiving Kosher meals, and was informed that it was because he was on a medical diet. (*Id.* at ¶¶ 18, 19).

Plaintiff alleges that he spoke to the head of the medical department about not receiving Kosher meals, and was allegedly informed that he was not receiving Kosher meals because he stated on several occasions that he was Muslim and/or did not have a religious faith. (*Id.* at ¶ 22). Plaintiff was further advised that he would remain on a medical diet. (*Id.*).

Plaintiff alleges that on March 25, 2014, Defendant Doll responded to his grievance and stated that he was not receiving Kosher meals based on his prior statements that he was of the Islamic faith and/or had no faith and, regardless, not all members of the Jewish faith follow a strict Kosher diet. (*Id.* at ¶¶ 23, 24). Plaintiff alleges that he appealed this decision to the York County Board of Commissioner's Office. (*Id.* at ¶ 25).

Plaintiff alleges that Defendants Doll, Bupp, and Abenshon held a "religious hearing" on May 16, 2014. (*Id.* at ¶ 27).

Plaintiff further alleges that on June 10, 2014, Defendant Trostle placed a "drawing of Jusus" in his cell. (*Id.* at ¶ 28).

5

On June 19, 2014, Plaintiff filed the instant action, seeking monetary damages, as well as declaratory and injunctive relief[1], for Defendants' alleged violation of his First and Fourteenth Amendment rights.

IV. **Discussion**

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). *See also Barna v. City of Perth Amboy*,

---

[1] By Order dated January 21, 2015, the Court previously denied Plaintiff's request for injunctive relief. *See* (Docs. 28, 29). Moreover, Plaintiff is no longer confined at the York County Prison and there is no indication that Plaintiff will be returned to the York County Prison in the foreseeable future. *See Fortes v. Harding*, 19 F. Supp. 2d 323, 326 (M.D. Pa. 1998) (concluding that unless there is a reasonable likelihood that the prisoner will be returned to the prison against which he seeks injunctive relief, the prisoner's transfer out of the institution moots any claims for injunctive or declaratory relief).

42 F.3d 809, 815 (3d Cir. 1994).

### A. York County Defendants' Motion to Dismiss

#### 1. *York County Commissioner's Office and York County Prison Religious Committee, et al.*

As an initial matter, the Court notes that the York County Commissioner's Office and the York County Prison Religious Committee, *et al.*, and are not separate legal entities subject to suit under § 1983. *See Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973) (a department within a prison "may not be sued under 42 U.S.C. § 1983 since it is not a person"); *K.S.S. v. Montgomery County Bd. of Com'rs*, 871 F. Supp. 2d 389, 398 (E.D. Pa. 2012) ("It is well established that arms of local municipalities – such as county departments and agencies ... – do not maintain an existence independent from the municipality"). Hence, the Court will dismiss Plaintiff's claims against the York County Commissioner's Office and the York County Prison Religious Committee, *et al.*, with prejudice.

#### 2. *Respondeat Superior*

Defendants Sabol, Chronister, Flannelly, and Reilly argue that Plaintiff fails to state a claim against them because they lack personal involvement in the alleged wrongs, and because Plaintiff's allegations against them are based solely on the doctrine of *respondeat superior*. (Doc. 21 at 4-8). The Court agrees.

Regarding *respondeat superior* liability, it is well-established that:

A defendant in a civil rights action must have personal involvement in the

7

alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). As the Supreme Court of the United States has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.... *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); *see also Dunlop v. Munroe*, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); *Robertson v. Sichel*, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

*Iqbal*, 556 U.S. at 675.

Moreover, a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred.

Applying these constitutional benchmarks, it is apparent that, with respect to Defendants Warden Sabol, President Chronister, Solicitor Flannelly, and Commissioner Reilly, Plaintiff's complaint fails to state a claim upon which relief can be granted. A review

of the complaint confirms that there are no specific assertions that any of these York County Defendants had any personal involvement in the purported violations of Plaintiff's constitutional rights. (*See generally* Doc. 1). Plaintiff does not allege that any of these Defendants were aware of or acquiesced in the purported constitutional violations by prison staff. Plaintiff's complaint is, in essence, nothing more than an assertion of *respondeat superior* liability which seeks to hold these York County Defendants liable based on their supervisory roles (i.e., Warden of the Prison, President of the Board of Commissioners, County Solicitor, and County Commissioner). This ground of constitutional liability has been squarely rejected by the courts. *See Rode*, 845 F.2d at 1207. Accordingly, Plaintiff's claims against Defendants Sabol, Chronister, Flannelly, and Reilly, to the extent they rely on a *respondeat superior* theory of liability, will be dismissed.

To the extent that Plaintiff attempts to hold any York County Defendants liable based on their involvement in the grievance procedure, this claim must also be dismissed. Notably, Plaintiff's only claim against Defendant Assistant Solicitor Reihart is based upon his involvement in the grievance appeal process. (Doc. 1, ¶ 26). Plaintiff also sets forth an allegation against Defendant Doll based on his response to inmate grievances. (*Id.* at 23). However, dissatisfaction with responses to an inmate's grievances does not support a constitutional claim. *See Alexander v. Gennarini*, 144 Fed. App'x 924 (3d Cir. 2005) (concluding that involvement in the post-incident grievance process is not a basis for § 1983

9

liability). The "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." *Flanagan v. Shively*, 783 F. Supp. 922, 931-32 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir. 1992). Thus, to the extent that the York County Defendants are sued in their capacity for denying Plaintiff's grievance and appeals, dissatisfaction with responses to an inmate's grievances does not support a constitutional claim. *See Alexander*, 144 Fed. App'x 924; *Cole v. Sobina*, No, 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). Accordingly, Plaintiff's claims against the York County Defendants, based on their participation in the grievance procedure, will be dismissed.

### 3. *First Amendment Free Exercise of Religion*

The York County Defendants collectively argue that Plaintiff's complaint must be dismissed for failure to state a claim upon which relief can be granted. *See* (Doc. 21). The First Amendment to the Constitution of the United States, made applicable to the States by the Fourteenth Amendment, *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), provides, *inter alia*, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . " U.S. Const. amend. I. The First Amendment offers protection for a wide variety of expressive activities. *See* U.S. Const. amend I. These rights are lessened, but not extinguished in the prison context,

10

where legitimate penological interests must be considered in assessing the constitutionality of official conduct. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). Although prisoners must be afforded "reasonable opportunities" to exercise their religious freedom guaranteed by the First Amendment, *Cruz v. Beto*, 405 U.S. 319, 322 n. 2 (1972), imprisonment necessarily results in restrictions on some constitutional rights, including the First Amendment's right to the free exercise of religion. *O'Lone v. Shabazz*, 482 U.S. 342, 348-49 (1987). It is well-established that only those beliefs which are (1) sincerely held, and (2) religious in nature are entitled to constitutional protection. *See Wisconsin v. Yoder*, 406 U.S. 205, 215-19 (1972); *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000); *Africa v. Pennsylvania*, 662 F.2d 1025, 1029-30 (3d Cir. 1981) (enumerating three indicia of religion as follows: (1) an attempt to address "fundamental and ultimate questions" involving "deep and imponderable matters"; (2) a comprehensive belief system; and (3) the presence of formal and external signs like clergy and observance of holidays).

Only sincerely held religious beliefs are entitled to Constitutional protection. Once a plaintiff establishes a sincerely held religious belief, he must then show that a prison regulation or practice violates the right to free exercise of religion by demonstrating that it violates the "reasonableness test" set forth in *Turner*, 482 U.S. at 89, and *O'Lone*, 482 U.S. at 349. This test examines the following four factors: (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of

11

expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other prisoners, and the effect on prison resources in general; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at *de minimis* cost to valid penological interests. *Thornburgh v. Abbott*, 490 U.S. 401, 415-18 (1989); *Turner*, 482 U.S. at 89-91. "The objective is to determine whether the regulation is reasonable given the prison administrators' penological concerns and the inmate's interest in engaging in the constitutionally protected activity." *DeHart*, 227 F.3d at 59. However, prison administrators need not choose the least restrictive means possible in trying to further penological interests, *Thornburgh*, 490 U.S. at 411, and it is the burden of the plaintiff to disprove the validity of a prison regulation or practice. *Williams v. Morton*, 343 F.3d 212, 217 (2003) (citing *Overton v. Bazzetta*, 539 U.S. 126 (2003)).

In the matter *sub judice*, the Court finds that Plaintiff has not established that he holds a sincere religious belief in Judaism. As stated above, Plaintiff alleges that upon intake to the York County Prison, he informed prison staff that he was Jewish. (Doc. 1, ¶¶ 13, 14). However, during Plaintiff's prior incarceration, he informed prison officials that he was of the Islamic faith and/or had no religious beliefs. (*Id.* at ¶¶ 23, 24). Plaintiff has clearly contradicted his own statement that he is of the Jewish religion. Moreover, Plaintiff submitted documents highlighting his lack of sincerity regarding his claimed religious beliefs.

12

*See* (Doc. 37).

Plaintiff asserts that Defendants Doll, Bupp, and Abenshon held a "religious hearing" on May 16, 2014.[2] (Doc. 1, ¶ 27). The result of the meeting determined that Plaintiff "had no understanding, sincerity or rational explanation for why a Kosher meal was important to [him] and why [he] should receive it, as a matter of religious practice." (*Id.* at 11). The findings of the religious committee were summarized as follows:

> He stated that he was attending the Church of the Nazarene on Still Meadow road. He believed when telling us this that it supported his claim that he is Jewish and should receive the kosher meal. We asked him if he realized that the Church of the Nazarene is a Christian based church and not Jewish. He looked surprised and said he did not know that. He tried to explain that he went to the Church of the Nazarene to discuss Judaism.
>
> He stated that he became interested in Judaism when he learned through Ancestry.com that his great, great grandmother was Jewish. We asked if he had that documentation, but he did not. We told him he could have his family send it to the Chaplain for review to support his accommodation request.
>
> He said that he follows the teachings of the religion and continues to learn more. He explained that he knows he must pray to the East. This is not a requirement of Judaism, but Islam. He presented no understanding of why a kosher diet is important to Judaism or him.
>
> He is currently assigned a medical diet due to various reported allergies. I asked him about his medical diet and he openly admitted that he knew he would likely have problems receiving the kosher meal so he requested a medical diet because he thought it was a meal plan "close to kosher". The medical diet is not kosher or even close to being kosher. He essentially

---

[2] The Court notes that prison officials are "entitled both to make a judgment about the sincerity and religious nature of an inmate's belief when he or she asks for different treatment and to act in accordance with that judgment." *DeHart v. Horn*, 227 F.3d 47, 52, n.3 (3d Cir. 2000).

13

admitted he manipulated medical staff by stating he has allergies to receive a medical diet since he was not approved for a kosher diet.

(*Id.* at 11-12).

The allegations of the complaint, and the documents submitted therewith, fail to establish that Plaintiff has a sincerely held religious belief. As aptly explained by the United States Court of Appeals for the Third Circuit, "[t]he mere assertion of a religious belief does not automatically trigger First Amendment protections .... To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." *DeHart*, 227 F.3d at 51. "Thus, if a prisoner's request for a particular diet is *not* the result of sincerely held religious beliefs, the First Amendment imposes no obligation on the prison to honor that request ...." *Id.* at 52. Consequently, because Plaintiff failed to sustain his burden of establishing a constitutionally protected interest, the York County Defendants are entitled to dismissal of the claims against them. *See, e.g., Sourbeer v. Robinson*, 791 F.2d 1094, 1102 (3d Cir. 1986) (upholding a finding of insincerity where prisoner only went to religious service five times in one year and did not designate a spiritual adviser to visit him).

With respect to Defendant Trostle, Plaintiff alleges that he placed a picture of "Jusus" in his cell. (Doc. 1, ¶¶ 28, 37). Plaintiff fails to state how this purported action violates his constitutional rights, and sets forth no further allegations against Defendant Trostle. Plaintiff has simply failed to state a viable cause of action against Defendant Trostle.

### *4. Religious Land Use and Institutionalized Persons Act*

Section 3 of Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability" unless the government establishes that the burden furthers "a compelling interest," and does so by the "least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); *see also Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005).

Although Congress intended that RLUIPA be construed "in favor of broad protection of religious exercise," *see* 42 U.S.C. § 2000cc-3(g), Congress also "anticipated that courts would apply the Act's standard with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" *Cutter*, 544 U.S. at 723. Congress indicated that in the event an inmate's request for religious accommodation would "become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition." *Id.* at 726.

It is first noted that Plaintiff cannot recover money damages against the Defendants in either their individual or official capacities under RLUIPA. In 2012, in the matter of *Sharp v. Johnson*, 669 F.3d 144 (3d Cir. 2012), in considering the issue of whether RLUIPA permits actions against State officials in their individual capacities, the United States Court of Appeals for the Third Circuit stated that "the Courts of Appeals for the Fourth, Fifth, Seventh and Eleventh Circuits—the only circuits we are aware of that have addressed this issue in precedential opinions—have rejected arguments similar to Sharp's and held that RLUIPA does not permit actions against government employees in their individual capacities. *See, e.g., Nelson v. Miller*, 570 F.3d 868, 886-89 (7th Cir. 2009); *Rendelman v. Rouse*, 569 F.3d 182, 186-89 (4th Cir. 2009); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 327-29 (5th Cir. 2009); *Smith v. Allen*, 502 F.3d 1255, 1271-75 (11th Cir. 2007), *abrogated on other grounds, Sossamon v. Texas*, —— U.S. ——, 131 S.Ct. 1651, 1654, 179 L.Ed.2d 700 (2011) (abrogating Smith as to the claim against government employees in their official capacities)." *Sharp*, 669 F.3d at 153-54. The Third Circuit joined those circuits in concluding that RLUIPA does not permit an action against defendants in their individual capacities. *Id.* at 155.

Nor can Plaintiff recover monetary damages against the Defendants in their official capacities as they are barred by the Eleventh Amendment. The Eleventh Amendment bars money damages sought against a state official acting in his or her official capacity absent a

16

valid abrogation by Congress or consent of the State. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (holding that "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."). Congress did not validly abrogate or purport to abrogate the States' sovereign immunity against damages claims under RLUIPA, and the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity. *Scott v. Beard*, 252 Fed. App'x 491 (3d Cir. 2007) (finding that the RLUIPA claim for money damages against a Pennsylvania state official in his official capacity is barred by the Eleventh Amendment because it is essentially a claim against the state itself). Defendants are entitled to the dismissal of any RLUIPA claim lodged against them in their official capacities.

Plaintiff also seeks injunctive and declaratory relief. Under RLUIPA, the plaintiff must show that his religious exercise has been burdened substantially by the challenged conduct. *Washington v. Klem*, 497 F.3d 272, 277-78 (3d Cir. 2007). The Third Circuit Court of Appeals has found that for the purposes of RLUIPA, a substantial burden exists where: "1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Id.* at 280. If the plaintiff shows that prison administrators' action or inaction has imposed a

substantial burden on the exercise of his religion, the prison administrator must establish that the challenged conduct furthers a compelling governmental interest and that it is the least restrictive means of furthering that interest. *Id.* at 283. As stated *supra*, Plaintiff failed to establish that he has a sincerely held religious belief. Accordingly, to the extent that Plaintiff asserts a RLUIPA claim, it will be dismissed.

### B. Defendant Bennett's Motion to Dismiss

Defendant Bennett seeks to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted. (Doc. 19 at 3-6). As stated *supra,* under the First Amendment's Free Exercise Clause, an inmate has a right to a special diet for religious reasons. In order to establish that the denial of Kosher meals violates the Free Exercise Clause, Plaintiff must show that the prison officials' decision contravenes his sincere religious beliefs and that the denial is not "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89; *Cooper v. Tard*, 855 F.2d 125, 129 (3d Cir. 1988); *Wilson v. Wetzel*, 2013 WL 4812497, at *9 (M.D. Pa. 2013). To determine whether a prison official's decision to deny Kosher meals is reasonably related to a legitimate penological interest, the Court considers the four (4) factors enumerated in *Turner*. *See Turner*, 482 U.S. at 78-79, 89-91. As outlined above, the Court finds that Plaintiff failed to sustain his burden of establishing that he holds a sincere religious belief in the Jewish religion. *See* (Doc. 1, ¶¶ 22, 23, 30; Doc. 37 at 11-12).

Moreover, Plaintiff fails to demonstrate that Defendant Bennett was personally involved in the purported unconstitutional conduct. Nor is there any evidence that Defendant Bennett played an "affirmative part" in the alleged denial of Plaintiff's First Amendment rights as Defendant Bennett did not participate in the religious hearing. Defendant Bennett merely explained to Plaintiff that he would remain on the medical diet and would not be placed on a Kosher diet. (*Id.* at ¶¶ 18, 19, 22).

Plaintiff fails to establish that he holds a sincerely held religious belief, and fails to demonstrate that Defendant Bennett, a nurse at the prison, played any role in making the decision of whether to provide him with a Kosher meal. Consequently, Defendant Bennett is entitled to dismissal of the claims against her.

## V. Leave to Amend

When a complaint fails to present a *prima facie* case of liability, courts should generally grant leave to amend before dismissing a complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper

decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). In the matter *sub judice*, the flaws in Plaintiff's claims are both legal and factual and thus incurable. Accordingly, the Court finds that curative amendment would be a futile endeavor.

## VI. Conclusion

For the reasons set forth above, Defendant Bennett's motion to dismiss, and the York County Defendants' first motion to dismiss, will be granted. (Docs. 18, 20). The York County Defendants' second motion to dismiss will be denied. (Doc. 35).

An appropriate Order shall issue.

Date: September 22, 2015

Robert D. Mariani
United States District Judge